IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN F. D'AMICO,

     Plaintiff,

vs.                                  Case No. 4:15cv127-MW/CAS

DR. VERNON MONTOYA,
DR. A. BUCARELLI,
DR. ALFONSO MARTINEZ, and
DR. P. MARCEUS,

     Defendants,
_____/

## DEFENDANT DR. VERNON MONTOYA'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

### MOTION

Defendant DR. VERNON MONTOYA ("Dr. Montoya"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss Plaintiff STEVEN D'AMICO's ("D'Amico") Complaint for failure to state a claim upon which relief can be granted. As grounds therefor, Dr. Montoya states:

1. Prisoner D'Amico brings this pro se action against Dr. Montoya and three codefendants pursuant to 42 U.S.C. § 1983 alleging that the Defendants, all doctors who allegedly treated D'Amico in prison, violated the Eighth Amendment to the United States Constitution.

2. Generally speaking, D'Amico, who is a leukemia patient, appears to allege that Dr. Montoya violated the Eighth Amendment by (1) discontinuing the medication Rituxan in

October 2014, and (2) failing to treat an oral lesion he reported to Dr. Montoya.[1]   The

Complaint fails to state a claim upon which relief can be granted for several reasons, each of

which alone requires its dismissal.

3.      To state a claim upon which relief can be granted under the Eighth Amendment

for inadequate medical treatment, a plaintiff must allege that the defendant showed deliberate

indifference to the plaintiff's serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

This requires a plaintiff to allege both an objective and subjective component. Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003).

4.      First, a plaintiff must plead that he or she had an objectively serious medical

need.  Id.  A serious medical need is one which "has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize

the necessity for a doctor's attention." Id.

5.      Second, a plaintiff must plead that the defendant acted with deliberate

indifference by pleading both (1) the defendant's subjective knowledge of a substantial risk of

serious harm, (2) disregard of that risk, and (3) conduct that is more than negligence. Bozeman

v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005).  Matters of medical judgment do not rise to the

level of deliberate indifference, nor do allegations of negligence or malpractice. Estelle, 429

U.S. at 105-06, 107.

6.      As a matter of law, the facts alleged in the Complaint do not amount to

deliberate indifference to a serious medical need because:

---

1.      Though the Complaint is not entirely clear, D'Amico may also allege that Dr.
Montoya wrongfully ceased treating him for leukemia altogether.  This is addressed in the
below memorandum of law.

a.      the Complaint does not allege deliberate indifference as to the discontinuation of Rituxan or the oral lesion – as a matter of law, a physician's determination to discontinue a medical treatment or not to treat a medical condition, without more, is not deliberate indifference;

b.      the Complaint does not allege that it was *Dr. Montoya* who was deliberately indifferent as to the Rituxan, which the Complaint alleges was discontinued pursuant to Corizon policy;[2] and

c.      the Complaint does not allege facts tending to plausibly show that D'Amico's oral lesion was a serious medical need.

WHEREFORE, Defendant DR. VERNON MONTOYA respectfully requests the Court dismiss Plaintiff STEVEN D'AMICO's Complaint for failure to state a claim upon which relief can be granted.


## MEMORANDUM OF LAW

D'Amico is a state prisoner.   According to the Complaint, oncologist Dr. Montoya diagnosed D'Amico with a slow-growing, manageable form of leukemia in 2007. (Complaint ¶ V.1.).   Dr. Montoya then "began a vigorous course of treatments," including the anti-cancer drug Rituxan.  (Id.).   Dr. Montoya also examined D'Amico quarterly.  (Id.).   By 2014, D'Amico had been receiving Rituxan for seven years, and the Complaint admits that this "successfully arrested" his leukemia.  (Id.).

---

2.      Corizon is the company which contracts with the State of Florida to provide medical care to prison inmates.  (Complaint ¶ V.3.).

3

D'Amico alleges that in 2012, during this seven-year treatment span, a company named Corizon became the health care provider for Florida inmates.[3]  (Id. ¶ V.3.).  D'Amico alleges that during his most recent quarterly visit with Dr. Montoya in October 2014, Dr. Montoya discontinued the Rituxan.   According to D'Amico, Dr. Montoya stated that "according to Corizon's 'policy,' [D'Amico] was only supposed to receive Rituxan for two years, and that [D'Amico] had already received Rituxan for seven years."  (Id. ¶ V.9.).  D'Amico alleges that he has not been seen by any oncologist or treated for leukemia since October 2014.  (Id.).

The Complaint seems to contain another allegation against Dr. Montoya.   D'Amico alleges that he has an oral lesion which has gone untreated.  (Id. ¶ V.11.).  D'Amico asserts that he reported this to Dr. Montoya at his October 2014 cancer visit.  He asserts that the lesion has now grown, and concludes that Dr. Montoya's "willful disregard for the risks . . . in leaving this lesion untreated" has caused him emotional distress.  (Id.).

As explained below, the Complaint fails to state a claim upon which relief can be granted because (1) the Complaint does not allege that Dr. Montoya was acting under color of state law when he treated D'Amico; (2) the Complaint does not allege deliberate indifference as to the discontinuation of Rituxan or the oral lesion – as a matter of law, a physician's determination to discontinue a medical treatment or not to treat a medical condition, without more, is not deliberate indifference; (3) the Complaint does not allege that it was *Dr. Montoya*

---

3.        The Complaint also contains allegations of other occurrences during this seven-year treatment span which, as best Dr. Montoya can discern, do not concern any cause of action D'Amico may be attempting to plead against Dr. Montoya. For instance, D'Amico alleges that Dr. Montoya referred him to dermatologists Dr. Salerno and Dr. Bucarelli, and he now takes issue with the care provided by those doctors and also sick call physician Dr. Martinez. (Complaint ¶¶ V.2.-V.8.).

4

who was deliberately indifferent as to the Rituxan, which the Complaint alleges was discontinued pursuant to Corizon policy; and (4) the Complaint does not allege facts tending to plausibly show that D'Amico's oral lesion was a serious medical need.

The Supreme Court has explained the requirements applicable to those attempting to plead civil causes of action. Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). The Court explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the *factual allegations* in the complaint "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and allow the Court to conclude that Dr. Montoya might plausibly be liable to D'Amico if those alleged facts are true.

Here, D'Amico did not allege that Dr. Montoya was deliberately indifferent to a serious medical need. The Complaint *may* contain these buzzwords, but these are legal conclusions, and D'Amico has not pled facts which plausibly support them. Indeed, the Complaint does not allege deliberate indifference, does not allege deliberate indifference *by Dr. Montoya*, and in part does not allege the existence of serious medical need.

5

The Eighth Amendment prohibits cruel and unusual punishment, but not every claim of inadequate medical treatment states a cognizable claim under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The Eighth Amendment does not mandate that medical care provided to a prisoner be perfect, the best obtainable, or even very good. Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991).

Rather, to state a claim for a violation of the federal Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. This is a high standard, and it ought to be. After all, a plaintiff desiring to show a doctor's medical decisions were in truth "punishment" will logically have a significant burden to bear. This requires a plaintiff to allege both an objective and subjective component. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

First, a plaintiff must plead that he or she had an objectively serious medical need. Id. A serious medical need is one which "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. The medical need must be one which poses a substantial risk of serious harm if left unattended. Id.

Second, a plaintiff must plead that the defendant acted with deliberate indifference by pleading both (1) the defendant's subjective knowledge of a substantial risk of serious harm, (2) disregard of that risk, and (3) conduct that is more than negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). This means the defendant must both be aware of facts from which it can be inferred that the plaintiff is under a substantial risk of serious harm, and that the defendant must himself actually draw that inference. Farmer v. Brennan, 511 U.S. 825, 837

(1994).  Matters of medical judgment do not rise to the level of deliberate indifference, nor do allegations of negligence or malpractice.[4]  Estelle, 429 U.S. at 105-06, 107.

Here, the Complaint must be dismissed because D'Amico has failed to allege nearly every element he must plead.   The Complaint does not allege that Dr. Montoya was deliberately indifferent to D'Amico's serious medical needs.

As to D'Amico's oncological treatment, this is true for two reasons.  First, Dr. Montoya's mere discontinuance of a treatment — which is all that is alleged here — is not by itself deliberate indifference to D'Amico's health.  If it were, a doctor would violate the Eighth Amendment every time he decided that a patient did not require treatment.  Second, the Complaint does not allege that it was *Dr. Montoya* who was deliberately indifferent as to the Rituxan, which the Complaint alleges was discontinued pursuant to Corizon policy.

As to D'Amico's oral lesion, D'Amico has again failed to state a claim for two reasons. First, he has not alleged facts tending to show that his single, un-described oral lesion was a serious medical need.  Second, he has not alleged facts tending to show that Dr. Montoya is not treating the lesion out of deliberate indifference to D'Amico's health.  These issues will be addressed in turn.

Rituxan is an anti-cancer drug.  According to the Complaint, Dr. Montoya diagnosed D'Amico with a manageable form of leukemia in 2007.  Dr. Montoya then "began a vigorous course of treatments," including the anti-cancer drug Rituxan, and examined D'Amico quarterly

---

4.      And while it may go without saying, a mere difference of opinion between an inmate and prison medical officials about the proper course of treatment does not support a claim for deliberate indifference.  Smith v. Florida Dep't of Corr., 375 Fed.Appx. 905, 910 (11th Cir. 2010).

for seven years.  The net result of this treatment, according to the Complaint, was that D'Amico's leukemia was "successfully arrested."  (Complaint ¶ V.1.).  Then, Dr. Montoya discontinued Rituxan in 2014 and D'Amico has not seen an oncologist since.  (Id. ¶ V.9.).

Dr. Montoya is not sure whether D'Amico is asserting that Dr. Montoya has been deliberately indifferent to D'Amico just because D'Amico has not recently seen an oncologist.  If D'Amico is alleging that, he has failed to state a claim.  There are a great many reasons why a doctor might no longer see a patient.  The Complaint does not allege that Dr. Montoya is refusing to see or treat D'Amico.  The Complaint does not allege that Dr. Montoya is ignoring D'Amico's cancer.  Indeed, it does not allege anything about why Dr. Montoya has not seen D'Amico since October 2014.  Without more, the mere fact that Dr. Montoya has not personally returned to see D'Amico does not tend to show that Dr. Montoya has been deliberately indifferent to D'Amico's medical needs.  One needs more facts to reach that conclusion, facts which are not in the Complaint.

The Complaint also does not allege sufficient facts to show that Dr. Montoya discontinued Rituxan because he was being deliberately indifferent to D'Amico's health.  There are simply no facts alleged on this topic at all.  The Complaint does not allege that Dr. Montoya's has actual subjective knowledge of a substantial risk of serious harm, but elected to disregard that risk.  There is only the bald conclusion that Dr. Montoya determined to discontinue Rituxan, so therefore Dr. Montoya was being deliberately indifferent.  A mere allegation of discontinuation of a medication does not constitute deliberate indifference. Carter v. Broward County Sheriiff's Dept. Med. Dept., 558 Fed.Appx. 919, 922 (11th Cir. 2014) ("Carter's primary argument is that a high-calorie/high-protein diet was medically necessary for

8

his HIV, and that Jackson was deliberately indifferent by discontinuing it . . . . While Carter may disagree with Jackson regarding his continued need for the diet, he has not presented any evidence to support his allegation that Jackson was deliberately indifferent by discontinuing it"); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable).   While Carter cases were decided on summary judgment, their rationale applies just as fully to pleadings – just as *evidence* of the mere discontinuation of medical treatment is not evidence of deliberate indifference, so also an *allegation* of discontinuation of medical treatment is not an allegation of deliberate indifference.[5]

This leads to the next point.   The Complaint does not truly allege *why* Dr. Montoya discontinued Rituxan at all.   It *does* allege that Dr. Montoya *said* he was discontinuing Rituxan because Corizon, the company which by then contracted with the State of Florida to provide healthcare to inmates, had a policy to give Rituxan for two years.   If that is true, Dr. Montoya was not deliberately indifferent to D'Amico's medical needs.   Rather, Corizon policy simply dictated that Rituxan be discontinued.

Finally, the Complaint also does not allege a set of facts which tends to show that Dr. Montoya's alleged failure to address D'Amico's oral lesion was deliberate indifference to a serious medical need.   According to the Complaint, D'Amico reported the oral lesion to Dr.

---

5.      Indeed, there are many valid reasons why a medication might be discontinued. Perhaps, for instance, the doctor felt that the medication had lost its efficacy for the patient and therefore there was no further reason to prescribe it.   That would be a medical judgment and not deliberate indifference; doctors do that all the time.   Without facts tending to show deliberate indifference, a complaint pleading the mere discontinuance of a medical treatment fails to meet the Twombly/Iqbal plausibility standard.

Montoya in October 2014, but Dr. Montoya "[left] the lesion untreated." (Complaint ¶ V.11.). The Complaint does not allege anything at all about the condition of the oral lesion in October 2014. D'Amico did not allege its size, its location, how long he had it, its suspected cause, its severity, or whether it was affecting any bodily function. All we know is that D'Amico had some sort of oral lesion, and nothing more

For two reasons, this does not allege deliberate indifference to a serious medical need. First, D'Amico has not alleged a serious medical need. A serious medical need is one which "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F.3d at 1243. To merely allege the existence of single un-described oral lesion is not to allege a medical need so obvious that a *lay person* would *easily recognize* the *necessity* for medical attention. While it is certainly possible that an oral lesion may need medical attention, D'Amico has not moved his claim from the realm of possibility into plausibility, and therefore has not satisfied the Twombley/Iqbal standard.

Second, reasons similar to those expressed above in discussion of oncological treatment, D'Amico has not alleged facts tending to plausibly show that Dr. Montoya was deliberately indifferent to the oral lesion. Dr. Montoya is an oncologist. Oncologists typically do not treat oral lesions. The mere fact that *any* physician did not treat a medical condition is not alone a sufficient allegation that the physician was deliberately indifferent to it. If it were, a doctor would violate the Eighth Amendment every time he determined that a patient's medical condition did not warrant treatment. A plaintiff must plead more (and here D'Amico has pled no) facts tending to show deliberate indifference. This is particularly true since Dr. Montoya

10

has not seen D'Amico *at all* since October 2014.   It is speculative to conclude that Dr.
Montoya's absence after seven years of consistent care is due to a sudden deliberate
indifference, so deliberate indifference has not been pled under the <u>Twombley/Iqbal</u> standard.

For these reasons, Dr. Montoya respectfully requests the Court dismiss D'Amico's
Complaint for failure to state a claim upon which relief can be granted.

PENNINGTON, P.A.

**MICHAEL J. THOMAS**
Florida Bar #897760
**KARA R. OTTERVANGER**
Florida Bar #112110
215 S. Monroe Street, Suite 200
Tallahassee, FL  32301
Tele:   (850) 222-3533
mike@penningtonlaw.com
thomasteam@penningtonlaw.com
*Attorneys for Defendant V. Montoya, M.D.*

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished via electronic mail on this _20th_ day of November, 2015, to:

A. Bucarelli, M.D.
Chief Health Officer
Taylor Correctional Institution
8501 Hampton Springs Road
Perry, Florida 32348
*CoDefendant*

Alfonso Martinez, M.D.
Chief Health Officer
Taylor Correctional Institution
8501 Hampton Springs Road
Perry, Florida 32348
*CoDefendant*

P. Marceus, M.D.
Chief Health Officer
Columbia Correctional Institution, Annex
216 Corrections Way
Lake City, Florida 32025
*CoDefendant*

Steven D'Amico
DC # L58304
Columbia Correctional Institution
216 Corrections Way
Lake City, Florida 32305
*Plaintiff*

PENNINGTON, P.A.


KARA R. OTTERVANGER