IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN F. D'AMICO,

    Plaintiff,

vs.                                                            Case No. 4:15cv127-MW/CAS

DR. VERNON MONTOYA,
DR. A. BUCARELLI,
DR. ALFONSO MARTINEZ,
and DR. P. MARCEUS,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

On July 1, 2015, the pro se Plaintiff filed a second amended complaint [hereinafter "complaint"], ECF No. 13, naming four persons as Defendants. On August 17, 2015, Plaintiff filed a motion for preliminary injunction. ECF No. 16. Service of the complaint was directed on September 3, 2015, ECF No. 17, and as of this date, service was executed on Defendant Montoya, ECF No. 20, and waived by Defendant Bucarelli,

ECF No. 34-36.  Service efforts have, thus far, been unsuccessful for Defendants Marceus, ECF No. 21, and Martinez, ECF Nos. 23, 30.[1]

On February 11, 2016, Defendant Bucarelli filed a response in opposition to Plaintiff's motion for preliminary injunction.  ECF No. 41.  That motion is now ready for a ruling.  It is also expedient to address the motion to dismiss filed by Defendant Montoya.  ECF No. 31.  Plaintiff has filed an amended response to that motion.  ECF No. 39.  This Report and Recommendation addresses both motions.

**The Complaint**

Plaintiff's complaint raises claims under the Eighth Amendment.  ECF No. 13.  Plaintiff contends Defendants have been deliberately indifferent to his medical needs and have "denied Plaintiff necessary medical care and medications."  *Id.* at 10.  Plaintiff alleges that in 2007, he was diagnosed with Chronic Lymphocytic Leukemia (CLL), a "slow growing blood cancer . .

---

[1] The first unexecuted return for Defendant Martinez stated only: "No longer employed at Taylor CI."  ECF Nos. 23.  The second return filed by the United States Marshals Service said they "have not been able to locate defendant Martinez and will not be able to provide assistance without an address or multiple identifiers."  ECF No. 30.  Additionally, the unexecuted return filed for Defendant Marceus advised he was "no longer employed at Columbia C.I."  ECF No. 21.  Both Defendants are alleged to be medical doctors who, ordinarily, could be located through a public records search using the Florida Department of Health's license verification.  The Marshals Service was directed to use reasonable efforts to locate Defendant Dr. Pierre Marceus.  ECF No. 22.  No response to that Order has yet been filed.

. ." *Id.* at 5. Plaintiff asserts that CLL cannot be cured, "but can be managed with proper treatment for 25 years." *Id.* Plaintiff began a rigorous course of treatment in 2007 which included Monoclonal anti-body therapy and the medication Rituxan. *Id.* Plaintiff said that those quarterly treatments managed his cancer for seven years. *Id.* Plaintiff also had "numerous skin lesions" removed in 2008 and was prescribed sunblock, hat, long sleeve shirts, and diphorhydramine because, as a cancer patient, Plaintiff states he "is at greater risk for developing secondary cancers." *Id.*

In 2012, the Department of Corrections contracted with Corizon to provide health care to inmates in its custody. *Id.* at 6. Following that change, Plaintiff was no longer provided "skin protection passes" and he no longer was seen by a Dermatologist. *Id.* Plaintiff alleges the Corizon "does not even have a Dermatologist available to Department inmates in need of skin care." *Id.* at 8. In 2014, while housed at Taylor Correctional Institution, Plaintiff again sought skin protection, but was denied by Defendant Bucarelli who Plaintiff described as "dismissive." ECF No. 13 at 6. Since being denied skin protection, Plaintiff states he was "exposed to long periods of sun [daily] at Taylor C.I. . . . and developed countless more moles and blemishes which have never been examined by a Dermatologist or any medical staff." *Id.* at 7.

Page 4 of 19

In October 2014, Plaintiff's Rituxan maintenance treatments were "suddenly discontinued" by Defendant Montoya.[2]  *Id.* at 8.  Plaintiff says he was told that pursuant to "policy," he was supposed to receive Rituxan for only two years.  *Id.*  Plaintiff reports that he has not seen an Oncologist since that time and has "not received medical care of any kind for CLL since October 8, 2014."  *Id.*  Plaintiff complains that the "lymph nodes in his neck have become enlarged and sore since the Rituxan treatments were stopped."  *Id.*  He alleges that failing to treat CLL allows it "to progress at great risk to Plaintiff."  *Id.*

Plaintiff also contends that Defendant Montoya suspected Plaintiff had a cancerous skin lesion on his face in October 2014, but no treatment for that condition, at least in part, because "Corizon does not have a Dermatologist available to inmates held by the Department."  ECF No. 13 at 8.  Plaintiff says he lives under emotional duress because the lesion has continued to develop and, also, "because of another lesion on the inside of his mouth which has gone untreated."  *Id.* at 9.  Plaintiff reported the lesion to Defendant Montoya at his last cancer clinic appointment on October 8,

---

[2] The complaint identifies Dr. Vernon Montoya as an Oncologist who is employed at the Reception and Medical Center in Lake Butler, Florida.  ECF No. 13 at 2.

2014, at R.M.C., but Plaintiff contends the "lesion has been allowed to grow to the point where it now gets bitten when Plaintiff eats food." *Id.*

Plaintiff alleged in the complaint that he was then confined at Columbia C.I. Annex and still "has not received any meaningful medical care at Columbia." *Id.* Plaintiff says Defendant Marceus has been "made aware of Plaintiff's medical history several times" but has "continued to deny Plaintiff passes for sunblock, hat, long sleeve shirts, and skin examinations . . . ." *Id.*

**Motion to Dismiss, ECF No. 31**

Defendant Montoya has moved to dismiss the complaint for failure to state a claim upon which relief may be granted. *Id.* at 1. Defendant contends that Plaintiff's facts "do not amount to deliberate indifference to a serious medical need . . . ." *Id.* at 2-3. It is argued that Plaintiff's complaint contains "buzzwords" and legal conclusions, but did not plead facts which plausibly support his Eighth Amendment claim. *Id.* at 5.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 550 U.S. at 558).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

**Analysis of Motion to Dismiss**

The Eighth Amendment requires that prisoners be provided treatment for their serious medical needs and a Defendant's failure to do so because of deliberate indifference to those needs amounts to cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Hernandez v. Sec'y Florida Dep't of Corr., 611 F. App'x 582, 583 (11th Cir. 2015).  There are three elements which must be shown to prevail on a claim alleging deliberate indifference: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  Mann v.

Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citing Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007)).  Furthermore, "[t]o show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoted in Hernandez, 611 F. App'x at 583-84).

An "objectively serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)); *see also* Hernandez, 611 F. App'x at 584 (quoting Farrow, 320 F.3d at 1245).  Alternatively, a medical need may be deemed "serious" if delay in treating the need would worsen the condition or "if left unattended" it would pose "a substantial risk of serious harm."  Mann, 588 F.3d at 1307 (11th Cir. 2009) (quoting Hill, 40 F.3d at 1188-89, and Farrow, 320 F.3d at 1243).

Defendant Montoya states that the complaint "does not allege deliberate indifference *by Dr. Montoya*, and in part does not allege the

existence of [a] serious medical need." ECF No. 31 at 5 (emphasis in original). It is argued that Plaintiff "has not alleged a serious medical need." *Id.* at 10. That argument is rejected as frivolous. Leukemia is a serious medical need. Additionally, having a lesion which is suspected by an Oncologist to be skin cancer is a serious medical need. Any lay person would readily recognize the need for a medical attention and a clarifying diagnosis for such a condition.

Defendant Montoya also argues the complaint does not allege deliberately indifference. ECF No. 31 at 7-10. The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

The Eleventh Circuit has established that a "plaintiff must show that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded the risk, and (3) displayed conduct beyond gross negligence." Hernandez, 611 F. App'x at 584 (explaining Farrow, 320 F.3d at 1245).

"Conduct that is more than mere negligence includes, inter alia, grossly inadequate care and a delay in treatment." 611 F. App'x at 584 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). Medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. Neither does "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)); *see also* Hernandez, 611 F. App'x at 584 (citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)(concluding "[m]edical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'") (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Put another way, "[m]atters of medical judgment do not rise to the level of deliberate indifference." Bell v. Sec'y of Florida Dep't of Corr., 491 F. App'x 57, 59 (11th Cir. 2012) (citing Estelle, 429 U.S. at 107, 97 S.Ct. at 292-93).

Defendant Montoya argues that the "mere discontinuance of a treatment . . . is not by itself deliberate indifference to [Plaintiff's] health."

*Id.* at 7.  Accepting the allegations as true, Plaintiff alleged that Defendant Montoya discontinued the Rituxan maintenance treatments.  ECF No. 13 at 8.  Plaintiff said he had not received *any* "medical care of any kind" for his cancer since Defendant Montoya discontinued the medication.  Plaintiff alleged that Defendant Montoya suspected Plaintiff had a cancerous skin lesion on his face and attempted to refer Plaintiff to a Dermatologist, but took no other action.  Plaintiff said Defendant Montoya left the lesion "untreated."

In Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), the prisoner alleged that after his doctor stopped all prescribed medications for HIV and hepatitis, his condition worsened and he faced serious health issues "which would cause him to die sooner."  The Eleventh Circuit concluded that the prisoner's allegations of "a total withdrawal of treatment for serious diseases, as a result of which he suffers from severe ongoing complications, is more susceptible to various illnesses, and his condition will rapidly deteriorate" demonstrated "imminent danger of serious physical injury" for purposes of 28 U.S.C. § 1915(g).  Brown, 387 F.3d at 1350.  The Court held that because the defendant had knowledge of the prisoner's diagnoses and "completely withdrew the prescribed treatment," it was sufficient to state a claim for deliberate indifference.  *Id.* at 1351.

Here, Plaintiff has demonstrated that he had serious medical needs and as an Oncologist, Defendant Montoya was aware of those needs. Not providing *any* treatment for cancer creates a serious risk of irreparable harm to Plaintiff. Defendant suggests various facts what were not pled in the complaint. *Id.* at 7-11. Plaintiff, however, is pro se and such complaints are read with leniency. Furthermore, Rule 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Details are developed in discovery and submitted as evidence at summary judgment. At this stage of litigation, the complaint sufficiently states a claim against Defendant Montoya and the motion to dismiss, ECF No. 31, should be denied.

**The Motion for Preliminary Injunction**

Plaintiff's motion requests "a preliminary injunction prohibiting Defendants from continued denial of proper medical care, treatments, and or medication." ECF No. 16 at 1. Plaintiff asserts that he "has not received treatments or cancer clinic examinations since October 8, 2014, despite signs" that his Chronic Lymphocytic Leukemia "is no longer in remission." ECF No. 16 at 4. He also states that he "has not received any treatments for the diagnosed skin cancer lesions on the face, and been denied all sun protection passes." *Id.* He says he has "been denied all cancer related

medical care since October 8, 2014." *Id.* Plaintiff asserts that granting his motion for "a preliminary injunction is the only meaningful relief available to the Plaintiff" as he remains in custody[4] and "under the complete control of the" Department of Corrections. *Id.* at 5.

**Defendant Bucarelli's Response[5]**

Defendant Bucarelli contends that Plaintiff's request for injunctive relief must be denied as moot. ECF No. 41 at 4. Defendant states that she "is no longer employed by Corizon and no longer provides any care to" Plaintiff. *Id.* at 4-5. Furthermore, Defendant Bucarelli provided treatment to Plaintiff while he was housed at Taylor Correctional Institution and she points out that Plaintiff is now "incarcerated at Columbia Correctional Institution . . . ." *Id.* at 5. Thus, Defendant argues that she would be unable to provide Plaintiff treatment "even if ordered by the Court." *Id.* Defendant also argues that Plaintiff has not met his burden in showing entitlement to a preliminary injunction. *Id.* at 5-7.

**Analysis of Preliminary Injunction**

---

[4] At the time the motion was filed, Plaintiff was housed at Columbia Correctional Institution. ECF No. 16 at 6. It appears from the Department of Corrections' website that Plaintiff is still there.

[5] Only Defendant Bucarelli filed a response to Plaintiff's motion for a preliminary injunction. ECF No. 41. Defendant Montoya filed only the motion to dismiss, ECF No. 31, and did not respond to the motion for preliminary injunction.

Granting or denying a preliminary injunction is a decision within the discretion of the district court. Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citing United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)). Preliminary injunctive relief may be granted only if the moving party establishes:

    (1) a substantial likelihood of success on the merits;

    (2) a substantial threat of irreparable injury unless the injunction issues;

    (3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause the opposing party; and

    (4) granting the injunction would not be adverse to the public interest.

Keeton v. Anderson–Wiley, 664 F.3d 865, 868 (11th Cir. 2011); Carillon Importers, Ltd., 112 F.3d at 1126; United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983); Mark Dunning Indus., Inc. v. Perry, 890 F. Supp. 1504, 1509-10 (M.D. Ala. 1995). A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant "clearly carries the burden of persuasion" of all four prerequisites, which is always upon the plaintiff. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); Jefferson County, 720 F.2d at 1519 (citing Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)). Additionally, "[t]he purpose of a

preliminary injunction is to protect the movant from irreparable injury and to preserve the status quo until the district court renders a meaningful decision on the merits. Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567 (5th Cir. 1974) (cited in Mark Dunning Indus., 890 F. Supp. at 1510.

Although deference is afforded prison officials in running prisons, and judges should not interfere with the practice of medicine, that deference does not require the Court to abdicate its duty. Inmates are entitled to appropriate medical care under the Eighth Amendment. It does not have to be the best care possible, but there must be care provided. By alleging that he has not received any medical care since October 2014 for leukemia and suspected skin cancer, including making a medical diagnosis, Plaintiff's complaint states a claim. He has alleged sufficient facts showing a substantial likelihood of success on the merits of his claim.

Moreover, Plaintiff faces a substantial threat of irreparable injury unless the injunction issues. Plaintiff has alleged that after receiving cancer treatment for years, it was abruptly discontinued for a reason unrelated to his medical needs. After discontinuing that medication, Plaintiff was not provided any other alternative medication or treatment. Plaintiff also alleged that his oncologist suspected Plaintiff had a cancerous skin lesion. Plaintiff alleged that no care has been provided and, thus, it is

unknown whether the lesion is a malignant melanoma or a basal cell carcinoma. However, even basal cells, if left untreated long enough, present a substantial threat of irreparable injury, especially for a person diagnosed with CLL. If a prison doctor's recommendation for a referral to a dermatologist is denied, the doctor retains a duty to provide medical care. Indeed, the prisoner's only hope of treatment rests more than ever on continued treatment from that physician.

    The scales weigh in Plaintiff's favor on the third element as well. The threatened injury to Plaintiff outweighs whatever harm the proposed injunction may cause the Defendants. Not providing any treatment may cost Plaintiff his life. No argument has been made as to what harm the injunction would cause Defendants. Plaintiff's requested remedy to received medical care for his serious medical needs "would not only *not* be harmful to the defendants, but represents their constitutional minimum duty under the Eighth Amendment." Lewis v. Florida Dep't of Corr., 522 F. App'x 590, 592 (11th Cir. 2013) (emphasis in original).

    Finally, granting the injunction would not be adverse to the public interest. The public has a justified expectation that incarcerated fathers, sisters, and sons are provided basic health care. Public interest is benefitted by knowledge that prisoners are not being subjected to cruel and

unusual treatment by the total withdrawal of medical care for serious illnesses.  Requiring such medical care is not adverse but, rather, in line with that interest.

Plaintiff has met all four prerequisites for injunctive relief. Notwithstanding, Defendant Bucarelli has argued that the motion is moot and cannot be granted because she is no longer employed in a position to provide treatment to Florida prisoners.  ECF No. 41 at 4-5.  It is also pointed out that Plaintiff is no longer at Taylor Correctional Institution but is now incarcerated at Columbia Correctional Institution.  *Id.* at 5.

Basic and routine medical care is provided to prisoners where they are housed.  Yet it is also a reasonable assumption that specialty care such as oncology services may be provided at Regional Medical Centers. Indeed, the complaint alleged that Defendant Montoya was employed at "Lake Butler, R.M.C."  ECF No. 13 at 2.  Therefore, notwithstanding Defendant Bucarelli's inability to provide treatment, Plaintiff's transfer to another prison has not rendered moot his request for medical care. Medical care for cancer and leukemia and should be provided no matter where Plaintiff is officially housed or permanently assigned.

An injunction "order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties'

officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2). An injunction would be applicable to Defendant Montoya and to other persons who participate in providing medical care to prisoners.

Plaintiff's motion for a preliminary injunction, ECF No. 16, should be granted. Under the Eighth Amendment, Plaintiff is entitled to receive medical care for CLL and to have a physician provide a diagnosis and treatment plan for the suspected lesions.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Montoya's motion to dismiss, ECF No. 31, be **DENIED**, that Plaintiff's motion for a preliminary injunction, ECF No. 16, be **GRANTED**, and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 25, 2016.

                    s/    Charles A. Stampelos  
                    **CHARLES A. STAMPELOS**  
                    **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**