## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**STEVEN F. D'AMICO,**

     **Plaintiff,**

**vs.**                           **Case No. 4:15cv127-MW/CAS**

**DR. VERNON MONTOYA,**
**DR. A. BUCARELLI,**
**DR. ALFONSO MARTINEZ,**
**DR. P. MARCEUS,**
**DR. HEZEKIAH OWOJUYIGBE,**
**and JULIE JONES,**

     **Defendants.**

_____/

## AMENDED REPORT AND RECOMMENDATION[1]

On August 17, 2015, pro se Plaintiff Steven D'Amico filed a motion

for preliminary injunction.  ECF No. 16.  A Report and Recommendation

was entered on that motion on February 25, 2016.  ECF No. 42.  United

States District Judge Mark Walker denied the motion for preliminary

injunction as to Defendants Bucarelli and Martinez, but otherwise reserved

_____

[1] A Report and Recommendation was entered in February 2016 concerning
Plaintiff's motion for preliminary injunction, ECF No. 16, and Defendant Montoya's
motion to dismiss, ECF No. 31.  This Amended Report and Recommendation is entered
as to Plaintiff's motion for preliminary injunction only.

for ruling that part of the Report and Recommendation which concerned the motion for preliminary injunction as to the remaining Defendants sued in their official (or quasi-official) capacities.  ECF No. 52 at 5-6.  Judge Walker noted that Plaintiff could seek prospective injunctive relief from the Defendants in their quasi-official capacities under *Ex parte Young*, 209 U.S. 123 (1908).  *Id.* at 2. Judge Walker determined that the Chief Health Officer at Columbia Correctional Institution and the *current* person occupying Dr. Montoya's position are proper Defendants.  *Id.* at 3-4.  At that time, neither of those officials had been served with process.  *Id.* at 4.  Judge Walker delayed ruling on Mr. D'Amico's motion for a preliminary injunction until the proper Defendants were served.  *Id.* at 5.

Dr. Montoya[2] filed a response advising that he could no longer provide relief on the motion and identifying his successor under Rule 25(d) as Dr. Matthew Sweetser.  ECF No. 57.  Service was then directed on Dr. Sweetser and also on Dr. Hezekiah Owojuyigbe (in place of Dr. Marceus), who appeared to be the Chief Health Officer at Columbia Correctional Institution.  ECF No. 57; *see also* ECF No. 59.  In addition, to avoid future difficulties and because the Secretary is in a position to

---

[2] Dr. Montoya remains in the case in his individual capacity.

Case No. 4:15cv127-MW/CAS

provide prospective injunctive relief to a Florida prisoner, Julie Jones was also added as a Defendant in her official capacity only and service directed on her.  ECF No. 59.

Subsequently, service was carried out on Dr. Sweetser on May 3, 2016, ECF No. 72, but that Defendant is in default.  It was brought to the Court's attention that Dr. Sweetser had been employed by Corizon as the oncologist at the Reception and Medical Center, but that at midnight on May 8, 2016, Corizon would no longer provide health care in Florida prisons.  ECF No. 69.  Instead, Centurion of Florida would provide that health care and Dr. Sweetser would not be employed by Centurion.  *Id.* at 2; *see also* ECF No. 85.  That information was informative, but does not change the fact that Dr. Sweetser had been served with process prior to expiration of Corizon's contractual relationship with the Department of Corrections.  He was required to file a response, but failed to do so.  Because substitution under Rule 25(d) is automatic, *whoever* the proper official is in Dr. Sweetser's former position as Oncologist at the Reception and Medical Center is in default.  *See* ECF No. 88.

Defendant Owojuyigbe has filed a response, ECF No. 87, to the motion for preliminary injunction, ECF No. 16, filed by Mr. D'Amico in

Case No. 4:15cv127-MW/CAS

August 2015.  Secretary Jones also filed a response in opposition to Plaintiff's motion for preliminary injunction.  ECF No. 94.[3]  ECF No. 94.

**Allegations of the Complaint**

Mr. D'Amico's second amended complaint [hereinafter "complaint"] raises claims under the Eighth Amendment.  ECF No. 13.  Mr. D'Amico contends Defendants have been deliberately indifferent to his medical needs and have denied him "necessary medical care and medications."  *Id.* at 10.  Mr. D'Amico alleges that in 2007, he was diagnosed with Chronic Lymphocytic Leukemia (CLL), a "slow growing blood cancer . . . ."  *Id.* at 5. Mr. D'Amico asserts that CLL cannot be cured, "but can be managed with proper treatment for 25 years."  *Id.*  Mr. D'Amico began a rigorous course of treatment in 2007 which included Monoclonal anti-body therapy and the medication Rituxan.  *Id.*  Mr. D'Amico said that those quarterly treatments managed his cancer for seven years.  *Id.*  In 2008, Mr. D'Amico also had "numerous skin lesions" removed and was prescribed sunblock, hat, long

---

[3] Secretary Jones requested ruling on the motion for preliminary injunction be stayed.  ECF No. 103.  That request was denied, but the Secretary was given additional time to file an amended response.  ECF No. 104.  The July 19, 2016, deadline has passed and no amended response has been filed.  Notably, Defendant Bucarelli had also opposed the motion for preliminary injunction, ECF No. 41, but Judge Walker has denied the motion as to that Defendant.  ECF No. 52.

sleeve shirts, and diphorhydramine because, as a cancer patient, he "is at greater risk for developing secondary cancers." *Id.*

In 2012, the Department of Corrections contracted with Corizon to provide health care to inmates in its custody. *Id.* at 6. Following that change, Mr. D'Amico was no longer provided "skin protection passes" and was no longer seen by a Dermatologist. *Id.* Mr. D'Amico alleges that Corizon did not make a Dermatologist available "to Department inmates in need of skin care." *Id.* at 8. In 2014, while housed at Taylor Correctional Institution, Mr. D'Amico again sought skin protection, but the request was denied by Defendant Bucarelli who Mr. D'Amico describes as "dismissive." ECF No. 13 at 6. Since being denied skin protection, Mr. D'Amico states he was "exposed to long periods of sun [daily] at Taylor C.I. . . . and developed countless more moles and blemishes which have never been examined by a Dermatologist or any medical staff." *Id.* at 7.

In October 2014, Mr. D'Amico's Rituxan maintenance treatments were "suddenly discontinued" by Defendant Montoya.[4] *Id.* at 8. Mr. D'Amico said he was told that pursuant to "policy," he was supposed to

---

[4] Dr. Vernon Montoya was an Oncologist employed at the Reception and Medical Center in Lake Butler, Florida. ECF No. 13 at 2.

receive Rituxan for only two years.  *Id.*  Mr. D'Amico reports that he has not

seen an Oncologist since that time and has "not received medical care of

any kind for CLL since October 8, 2014."  *Id.*  Mr. D'Amico complains that

the "lymph nodes in his neck have become enlarged and sore since the

Rituxan treatments were stopped."  *Id.*  He alleges that failing to treat CLL

allows it "to progress at great risk to Plaintiff."  *Id.*

Mr. D'Amico also contends that Defendant Montoya suspected he

had a cancerous skin lesion on his face in October 2014, but "was

prevented" from providing treatment, at least in part, because Corizon did

not make a Dermatologist available.  ECF No. 13 at 8.  Mr. D'Amico says

he lives under emotional duress because the lesion has continued to

develop and, also, "because of another lesion on the inside of his mouth

which has gone untreated."  *Id.* at 9.  Mr. D'Amico reported the lesion to

Defendant Montoya at his last cancer clinic appointment on October 8,

2014, at R.M.C., but Mr. D'Amico contends the "lesion has been allowed to

grow to the point where it now gets bitten when Plaintiff eats food."  *Id.*

Mr. D'Amico alleged that as of July 2015 when the complaint was

filed, he was confined at Columbia C.I. Annex.  ECF No. 13 at 9.  Despite

having "submitted sick call requests and [having] filed grievances regarding

the discontinuance of Rituxan treatments for CLL, and other cancer

concerns" he still "has not received any meaningful medical care at

Columbia." *Id.* Mr. D'Amico says he is still denied "passes for sunblock,

hat, long sleeve shirts, and skin examinations . . . ." *Id.*

**The Motion for Preliminary Injunction**

Mr. D'Amico's motion requests "a preliminary injunction prohibiting

Defendants from continued denial of proper medical care, treatments, and

or medication." ECF No. 16 at 1. Mr. D'Amico asserts that he "has not

received treatments or cancer clinic examinations since October 8, 2014,

despite signs" that his Chronic Lymphocytic Leukemia "is no longer in

remission." ECF No. 16 at 4. He also states that he "has not received any

treatments for the diagnosed skin cancer lesions on the face, and been

denied all sun protection passes." *Id.* He says he has "been denied all

cancer related medical care since October 8, 2014." *Id.* Mr. D'Amico

asserts that granting his motion for "a preliminary injunction is the only

meaningful relief available to the Plaintiff" as he remains in custody[5] and

"under the complete control of the" Department of Corrections. *Id.* at 5.

_____

[5] At the time the motion was filed, Mr. D'Amico was housed at Columbia
Correctional Institution. ECF No. 16 at 6. It appears from the Department of
Corrections' website that Mr. D'Amico is still there.

**Responses**

The Secretary responded by pointing out that Mr. D'Amico acknowledged in his complaint "that he was seen 'in February 2015 . . . for his CLL treatment.'"  ECF No. 94 at 2 (citing to ECF No. 13 at 9).  There, Mr. D'Amico alleged that he "was seen briefly by Dr. Marceus in February of 2015 for his CLL," but he said that Dr. Marceus "merely told" him "that his blood work looked good."  ECF No. 13 at 9.  Mr. D'Amico alleged that Dr. Marceus did not give him any "other information regarding the CLL or other cancers."  *Id.*  Additionally, he alleged that Dr. Marceus denied him "passes for sunblock, hat, long sleeve shirts, and skin examinations . . . ."  *Id.*  A cursory examination is no better than no examination, and the Secretary has provided no clarification as to the February examination.

The Secretary also said that a medical appointment "was scheduled for" April 29, 2015, ECF No. 94 at 2, but the Secretary has not shown what care, if any, was provided at that appointment.  The Secretary argues that this case is merely a "difference of medical opinion."  *Id.* at 4.  Further, it is argued that Mr. D'Amico "vacillates between claiming a complete denial of medical care" to "being seen in a 'cursory manner.'"  *Id.*  The Secretary argues that Mr. D'Amico "has not alleged that he in fact has a current

diagnosis of any active cancer."  ECF No. 94 at 5.  "He merely speculates

that lesions and sores are cancerous."  *Id.*  The Secretary points out that

he was scheduled for a medical appointment on April 29, 2015, and was

able to "sign up for sick call if he had any medical issues."  *Id.* at 6.

It is argued that the Department of Corrections would be prejudiced if

the injunction were granted.  *Id.* at 6-7.  The Secretary asserts that medical

staff would face "a log jam of cases" if injunctions were issued every time

an inmate disagreed with the treatment provided.  *Id.* at 6.  Furthermore,

the Secretary contends that public interest is "best served by allowing

trained medical professionals to determine the appropriate treatment of

state prisoners, rather than the courts, lawyers, or the inmates

themselves."  *Id.* at 7.

Defendant Dr. Owojuyigbe also opposes issuance of a preliminary

injunction.  ECF No. 87.  Dr. Owojuyigbe opposes the motion for the same

reasons presented in the motion to dismiss.  *Id.* at 7.  Those reasons

include a contention that Dr. Owojuyigbe's presence in this case is

redundant, that Plaintiff failed to exhaust administrative remedies, had

three prior cases dismissed for failing to state a claim or as frivolous, that

the complaint failed to state a claim, that money damages cannot be

Case No. 4:15cv127-MW/CAS

obtained from a state official sued in his official capacity under § 1983, and

that Plaintiff failed to "plead the existence of a policy or custom which

caused a violation of Plaintiff's rights."  *Id.*  Those arguments were all

rejected, with the exception of the claim for monetary damages in his

official capacity.  ECF Nos. 98, 106.

Dr. Owojuyigbe argues that issuance of a preliminary injunction is not

necessary to prevent irreparable injury or harm.  ECF No. 87 at 8.  He

contends that Mr. D'Amico's allegations are "unsupported conclusions

based solely on Plaintiff's subjective belief."  *Id.*  Dr. Owojuyigbe suggests

that Mr. D'Amico's own allegations show he has been examined by several

physicians over the years who advised Plaintiff did not meet the criteria for

Tiruxan or skin passes, that Plaintiff's blood work looked good, and he had

been treated appropriately.  *Id.*

In addition, Dr. Owojuyigbe contends that granting the motion for a

preliminary injunction would take Dr. Owojuyigbe away from his "many

duties as Chief Health Officer of CCI, and would provide no benefit to

Plaintiff or anyone else."  ECF No. 87 at 9.  Furthermore, granting the

injunction would be adverse to the public interest because taking

Dr. Owojuyigbe away from his "many duties" would "possibly" require CCI

(Columbia Correctional Institution) to "employ additional resources to complete required tasks."  *Id.*

## Analysis

Granting or denying a preliminary injunction is a decision within the discretion of the district court.  Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citing United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)).  Preliminary injunctive relief may be granted only if the moving party establishes:

> (1) a substantial likelihood of success on the merits;
>
> (2) a substantial threat of irreparable injury unless the injunction issues;
>
> (3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause the opposing party; and
>
> (4) granting the injunction would not be adverse to the public interest.

Keeton v. Anderson–Wiley, 664 F.3d 865, 868 (11th Cir. 2011); Carillon Importers, Ltd., 112 F.3d at 1126; United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983); Mark Dunning Indus., Inc. v. Perry, 890 F. Supp. 1504, 1509-10 (M.D. Ala. 1995).  A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the

movant "clearly carries the burden of persuasion" of all four prerequisites, which is always upon the plaintiff.  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); Jefferson County, 720 F.2d at 1519 (citing Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)).  Additionally, "[t]he purpose of a preliminary injunction is to protect the movant from irreparable injury and to preserve the status quo until the district court renders a meaningful decision on the merits.  Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567 (5th Cir. 1974) (cited in Mark Dunning Indus., 890 F. Supp. at 1510).

The Eighth Amendment requires that prisoners be provided treatment for their serious medical needs and a Defendant's failure to do so because of deliberate indifference to those needs amounts to cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Hernandez v. Sec'y Florida Dep't of Corr., 611 F. App'x 582, 583 (11th Cir. 2015).  This Court has already held that Mr. D'Amico has alleged a serious medical need.[6]  ECF No. 42 at 9; ECF No. 98 at 7; *see*

---

[6]  As a comparison, in Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), the prisoner alleged that after his doctor stopped all prescribed medications for HIV and hepatitis, his condition worsened and he faced serious health issues "which would cause him to die sooner."  The Eleventh Circuit concluded that the prisoner's allegations of "a total withdrawal of treatment for serious diseases, as a result of which he suffers from severe ongoing complications, is more susceptible to various illnesses, and his condition will rapidly deteriorate" demonstrated "imminent danger of serious physical injury" for purposes of 28 U.S.C. § 1915(g).  Brown, 387 F.3d at 1350.  The Court held

*also* ECF Nos. 52 and 106. Accepting the allegations as true, Mr. D'Amico

alleged that the previously provided Rituxan maintenance treatments had

been discontinued. ECF No. 13 at 8. Mr. D'Amico said he had not

received *any* "medical care of any kind" for his cancer since that

discontinuation. Mr. D'Amico alleged that Defendant Montoya, a doctor,

suspected that Mr. D'Amico had a cancerous skin lesion on his face, but no

action was taken because a Dermatologist was not available. Thus,

suspected cancerous skin lesions have gone untreated and undiagnosed

for a significant period of time. Mr. D'Amico has demonstrated the

existence of serious medical needs and medical providers were aware of

those needs. Not providing *any* treatment for leukemia or cancer creates a

serious risk of irreparable harm to Mr. D'Amico.

Although deference is afforded prison officials in running prisons, and

judges should not interfere with the practice of medicine, that deference

does not require the Court to abdicate its duty. Inmates are entitled to

appropriate medical care under the Eighth Amendment. It does not have to

be the best care possible, but care must be provided. By alleging that he

---

that because the defendant had knowledge of the prisoner's diagnoses and "completely
withdrew the prescribed treatment," it was sufficient to state a claim for deliberate
indifference. *Id.* at 1351.

Case No. 4:15cv127-MW/CAS

has not received any medical care since October 2014 for leukemia and suspected skin cancer, including referring him to an appropriate physician who could confirm or reject a diagnosis, Mr. D'Amico alleged sufficient facts showing a substantial likelihood of success on the merits of his claim.

As for the argument that this case is merely a "difference of medical opinion," it is incumbent upon Defendants to *demonstrate* the truth of that assertion. However, no medical records have been provided showing medical care has been provided. No evidence has been submitted to show the basis for a medical opinion that Mr. D'Amico is receiving care that is appropriate and within the mandates of the Eighth Amendment. Mr. D'Amico has shown the total withdrawal of treatment, and Defendants have not shown any treatment provided.

The Secretary argues that Mr. D'Amico has not shown that he has a "current diagnosis of any active cancer." ECF No. 94 at 5. While that may be true, Defendants have not shown that he does *not* have such a diagnosis. Moreover, it is undisputed that Mr. D'Amico was previously diagnosed with CLL. Rituxan treatments for CLL that were provided for years were abruptly discontinued and no medical basis for doing so has been provided. No Defendant has shown that other alternative treatments

Case No. 4:15cv127-MW/CAS

have been provided, and no Defendant has shown that no treatment is necessary based on Mr. D'Amico's current medical status.

It has also been argued that Mr. D'Amico "merely speculates that lesions and sores are cancerous."  The allegations of the complaint, however, alleged that a *physician* (an oncologist) suspected cancer but no diagnosis was provided because no Dermatologist has been provided to prisoners in the Florida Department of Corrections.  Suspected cancerous lesions have gone without treatment for a considerable amount of time.  It is unknown whether lesions are malignant melanoma or basal cell carcinoma.  However, even basal cells, if left untreated long enough, present a substantial threat of irreparable injury, especially for a person diagnosed with CLL.  If a prison doctor's recommendation for a referral to a dermatologist is denied, the doctor retains a duty to provide medical care. In light of these facts, Mr. D'Amico has sufficiently shown that he faces a substantial threat of irreparable injury unless the injunction issues.

The argument that medical staff would face "a log jam" if injunctions were issued based on an inmate's disagreement with treatment provided is rejected.  The recommendation to issue the injunction is because no Defendant has shown that treatment *has been provided*.  An injunction is

Case No. 4:15cv127-MW/CAS

necessary to ensure that Mr. D'Amico is examined by a medical

professional to determine the appropriate treatment for his condition, and to

provide needed healthcare.  The threatened injury to Mr. D'Amico

outweighs whatever harm the proposed injunction may cause the

Defendants.  Not providing any treatment may cost Mr. D'Amico his life.

The only other argument suggested is that granting the injunction

would take Dr. Owojuyigbe away from his "many duties" and might possibly

require employing additional resources.  If providing medical care to one

inmate who has been diagnosed with CCL and is suspected to have

cancerous skin lesions would so occupy the time of medical staff that

additional staff should be hired, then so be it.  Providing medical care for an

inmate's serious medical needs is not only "*not* harmful" to the Defendants,

"but represents their constitutional minimum duty under the Eighth

Amendment."  Lewis v. Florida Dep't of Corr., 522 F. App'x 590, 592 (11th

Cir. 2013) (emphasis in original).

Finally, granting the injunction would not be adverse to the public

interest.  The public has a justified expectation that incarcerated fathers,

sisters, and sons are provided basic health care.  Public interest is

benefitted by knowledge that prisoners are not subjected to cruel and

Case No. 4:15cv127-MW/CAS

unusual treatment by the total withdrawal of medical care for serious illnesses.  Requiring such medical care is not adverse but, rather, in line with that interest.

Mr. D'Amico has met all four prerequisites for injunctive relief. Mr. D'Amico should, in expeditious fashion, be examined and provided medical care for his serious medical needs, by a physician who recognizes the seriousness of CCL, leukemia, and potential skin cancer.  Mr. D'Amico should be examined by a Dermatologist who can provide a diagnosis for his lesions and sores.  Mr. D'Amico should be provided a treatment plan for his medical needs.  Doing so is required by the Constitution.  Doing nothing is not an option.

An injunction "order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2).  An injunction would be applicable to the Secretary and Dr. Owojuyigbe and to other persons who participate in providing medical care to prisoners.  Mr. D'Amico's motion for

a preliminary injunction, ECF No. 16, should be granted.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that

Plaintiff's motion for a preliminary injunction, ECF No. 16, be **GRANTED**,

and Plaintiff be provided medical care, diagnosis, and treatment as

needed.  It is further **RECOMMENDED** that this case be **REMANDED** for

further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on July 28, 2016.


 s/    Charles A. Stampelos          
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this Report and Recommendation.  A copy of objections shall be served upon all other parties.  If a party fails to object to the findings or recommendations made herein as to any particular claim or issue, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.  A party may respond to another party's objections within 14 days after being served with a copy thereof.**